**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**IVORY SHIRE,**

                                   **Petitioner,**

        **-v-**                                                    **Civ. No. 9:07-CV-285**
                                                                          **(TJM)**

**JOSEPH J. COSTELLO,**

                                   **Respondent.**

**APPEARANCES:**                                     **OF COUNSEL:**

**IVORY SHIRE, Petitioner** *pro se*
**95-A-0140**
**Groveland Correctional Facility**
**7000 Sonyea Road**
**Sonyea, New York 14556**

**HON. ANDREW M. CUOMO**                      **THOMAS B. LITSKY, ESQ.**
**Attorney General for the State of New York**      **Assistant Attorney General**
**Attorney for Respondent**
**120 Broadway**
**New York, New York 10271**

**THOMAS J. McAVOY**
**SENIOR U.S. DISTRICT JUDGE**

**DECISION AND ORDER**

**I.      Background**

        **A.      State Court Proceedings**

        The following factual summary is derived from the state court records. On November 11,

1995, New York State Department of Correctional Services Investigator James Bezio posed as

the brother of prison inmate Frank Albanese and arranged to make a drug transaction with

Petitioner and Petitioner's wife, Yolanda Shire. Dkt. No. 9, Ex. D at 250-51.[1]  During a three-way phone call that took place at approximately 9:56 a.m. on November 11, 1995, the three arranged for Bezio to meet Mrs. Shire near the prison.  *Id.* at 251, 291.  At the meeting, Bezio would pay Mrs. Shire $400.00 in exchange for marijuana, heroin and cocaine.  *Id.* at 251-53.  During a second three-way phone call that same afternoon, Mrs. Shire advised Bezio that she would be arriving at the prison by bus at 6:00 a.m. on November 12, 1995.  *Id.* at 252-53. Both conversations were recorded and admitted into evidence at trial.  *Id.* at 252-59.

On November 12, 1995, at approximately 7:30 a.m., Bezio and Mrs. Shire met in the visitors processing area of the Clinton Correctional Facility annex as planned. Dkt. No. 9, Ex. D at 260.  The two left the facility and drove to a restaurant.  While in the parking lot, Mrs. Shire gave Bezio a balloon containing heroin, cocaine and marijuana, and Bezio gave her the $400.00. *Id.* at 260-63.  The money was photocopied prior to the exchange.  *Id.* at 261-64.  Mrs. Shire was arrested, and Investigator James Ferro recovered the $400.00 from Mrs. Shire's pocket.  *Id.* at 263.  Bezio photocopied the money a second time on November 27 or 28, 1995.  *Id.* at 264.

The balloon contained a cellophane bag with two glassine envelopes of powder, two ziplock bags of vegetation and a plastic baggie of powder. Dkt. No. 9, Ex. D at 333-34.  Bezio sealed the items and placed them in a secure filing cabinet at his residence, where they remained until he returned from vacation.  *Id.* at 268-70, 272-74. Bezio removed the items from the cabinet on November 28, 1995 and took them to the Albany State Police Crime Lab for further testing. *Id.* at 270-71. Andre P. LaVigne, a forensic scientist, tested the substances.  *Id.* at 333-37.  One of the two glassine envelopes tested positive for a mixture of heroin and cocaine weighing 0.066

---

[1] "Ex. D" followed by a number refers to the handwritten page numbers that appear in the lower right hand corner of each page of the transcript.

grams, and one of the bags of vegetation tested positive for marijuana.  *Id.* at 335-39, 344-45.

The plastic baggie of powder tested positive for cocaine and weighed 0.64 grams.  *Id.* at 338.

On November 12, 1995, Bezio ordered the transport of Petitioner from the prison to the

New York State Police barracks. Dkt. No. 9, Ex. D at 275.  At approximately 9:00 a.m.,

Investigator Ferro interviewed Petitioner. Investigator Bezio was present during the interview and

was processing evidence. *Id.* at 275, 279.  Petitioner was aware that his wife had been arrested

and was at the same state police barracks. *Id.* at 314-15, 317, 707-08.  Ferro advised Petitioner of

his *Miranda*[2] warnings, and had Petitioner read each right out loud, initial each right, and sign his

name underneath them. *Id.* at 309-312, 707-11.  Petitioner indicated that he understood each

right.  *Id.*  Petitioner did not ask for a lawyer and agreed to speak to Investigator Ferro. *Id.* at 714-

17.  Petitioner admitted to participating in the three-way phone calls with his wife and Bezio, and

told Ferro that he talked his wife into making the drug exchange and that he did it because he was

poor.  *Id.* at 311, 714.  Petitioner read his statement out loud, made a correction, and signed it at

approximately 9:25 a.m. *Id.* at 313, 725.

An indictment was returned by a Clinton County grand jury charging Petitioner with third

degree criminal sale of a controlled substance (N.Y. PENAL LAW § 220.39) and fourth degree

conspiracy.  N.Y. PENAL LAW §105.10.[3]  The Honorable Patrick R. McGill, Clinton County

Court Judge, presided over Petitioner's trial proceedings.  Petitioner was represented during pre-

trial and trial proceedings by John Carter, Esquire.

---

[2]  *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]  Unless otherwise indicated, all references to the New York Penal Law are to McKinney 1998.

A *Huntley*[4] hearing was held on August 26, 1996 before County Court Judge Andrew Halloran. Dkt. No. 9, Ex. D at 686-747.  The trial court denied Petitioner's motion to suppress his statement to police, finding that Petitioner was advised of his *Miranda* warnings, that he knowingly, voluntarily and intelligently waived his rights, that his statement was voluntary, and that he in fact made the written statement in evidence before the court. *Id.* at 744-45.

A jury trial began on September 30, 1996 and concluded on October 4, 1996.  At the close of the People's case, Petitioner testified in his own behalf.  He told the jury that he was convicted in December 1994 for third degree criminal sale of a controlled substance and that in June or July 1995 he was transferred to Building 3, Merrill-Cooper Unit, at Clinton Correctional Facility, where he met Frank Albanese. Dkt. No. 9, Ex. D at 353-56.  They shared meals, and Albanese gave Petitioner sneakers, a sweat suit, cigarettes and food from care packages.  *Id.* at 358-61, 388, 497-98.  Albanese paid Petitioner's home phone bill, and frequently spoke to Petitioner's wife.  *Id.* at 361-62.  Albanese made Petitioner believe that he owed Albanese because Albanese "looked out" for Petitioner, and asked him to have his wife bring drugs to the prison.  *Id.* at 363-67, 392-93. Petitioner testified that he was afraid for his life.  *Id.* at 367, 377. He acknowledged that he participated in the phone calls to arrange the drug exchange, and that it was his voice on the taped conversations, but denied making the written confession.  *Id.* at 376-79, 397-404, 406-09.

Petitioner called two witnesses.  Clinton Correctional Facility Assistant Superintendent Ralph J. Santor testified he met with Bezio to arrange the transfer of Petitioner to the same

---

[4] *People v. Huntley,* 15 N.Y.2d 72 (1965). A *Huntley* hearing is conducted to determine whether a defendant's statements to the police must be suppressed on the grounds that he was subjected to custodial interrogation without the warnings required under *Miranda v. Arizona*, 384 U.S. 436 (1966).  *See Harris v. New York*, 202 F. Supp. 2d. 3, 4 n.3 (S.D.N.Y. 2001); *see also* New York's Criminal Procedure Law ("CPL") § 710.

building as Albanese and that they were housed two rooms apart. Dkt. No. 9, Ex. D at 508-11.

Frank Albanese testified that he contacted the District Attorney's Office about narcotics being

brought into Clinton Correctional Facility.  *Id.* at 483-85.  Albanese met with Bezio on

November 10, 1995, and agreed to pass Bezio off as his brother.  *Id.* at 286, 484, 490.  Albanese

led Petitioner to believe that he would be speaking with Albanese's brother to arrange the drug

exchange.  *Id.* at 500-03.  He denied putting any pressure on Petitioner or that he or his friends

threatened Petitioner.  *Id.* at 487-88.  Albanese testified he cooperated because he wanted to get

drugs out of the prison.  *Id.* at 488.  Albanese was transferred to Woodbourne Correctional

Facility on Staten Island, near his home, in exchange for his cooperation. *Id.* at 304, 488, 500.

On October 4, 1996, the jury convicted Shire of both counts in the indictment.  On

February 6, 1997,  Petitioner was sentenced as a persistent felony offender to an indeterminate

term of fifteen years to life for third degree criminal sale of a controlled substance and a

concurrent term of one and one-half to three years for fourth degree criminal conspiracy.  Dkt.

No. 9, Ex. H (Decision and Order, Dec. 6, 2004, McGill, J.,) at 9-11; Dkt. No. 9, Ex. D at 993-

94.

Shire appealed his conviction to the New York State Supreme Court Appellate Division,

Third Department.  While preparing the appeal, appellate counsel Cheryl Maxwell, Esquire, tried

to obtain pre-trial, trial and sentencing transcripts.  The transcripts of the *Huntley* hearing,

transcribed by court reporter Jeffery T. Glanda, and the sentencing hearing, transcribed by court

reporter Jeffrey Schneider, were missing. Neither reporter worked for the Unified Court System

when the transcripts were requested.[5]  Court reporter Thomas Bess reconstructed the transcripts

for Petitioner's arraignment, pre-trial and trial proceedings.  *See* Dkt. No. 9, Ex. A (letter dated

April 6, 1999 from Terry James Gordon to Michael Novack and attached list of transcripts).

On February 8, 2002, Maxwell wrote to Judge McGill advising that she and the

prosecutor had not been able to settle the record.  Counsel asked for a meeting to review the

court's notes of the proceedings.  *See* Dkt. No. 9, Ex. H at 3.  In an Order dated March 5, 2002,

Judge McGill requested that counsel provide copies of the transcripts at issue and specific

objections and proposed amendments to the transcripts, with particular emphasis on the

identification of areas relevant to the appeal.  *Id.* at 3.  Counsel complied with the order in a

submission dated March 12, 2003.  *Id.*

Counsel proposed several amendments to the transcript of the trial, and the District

Attorney accepted each proposed amendment.  Dkt. No. 9, Ex. H at 4.  The transcript was then

produced with the additions and deletions to which the parties stipulated.  *Id.* at 5.  The parties

signed a certification of the record on September 22, 2004 that included those changes. *Id.* They

were unable to reach an agreement, however, regarding the missing *Huntley* hearing and

sentencing transcripts, and other gaps in the transcripts.  Dkt. No. 9, Ex. D, at 774-76.

Three reconstruction hearings were held in an effort to settle the record.  At the first

hearing on August 19, 2003, the parties advised the court that an uncertified copy of the *Huntley*

hearing transcript had been located in Petitioner's trial counsel's file. Dkt. No. 9, Ex. H at 5; Ex.

D at 751-54.  The transcript revealed that the *Huntley* hearing was held before County Court

---

[5]  After Petitioner's trial, Glanda was convicted of murder.  *See People v. Glanda*, 5 A.D.3d 945 (3d Dept. 2004), *lv. denied* 3 N.Y.3d 674 (2004), *cert. denied* 543 U.S. 1093 (2005). Schneider's whereabouts were unknown but he was believed to have moved out of state.  *See* Dkt. No. 9, Ex. A (letter dated April 6, 1999 from Terry James Gordon to Michael Novack).

Judge Andrew J. Halloran on August 26, 1996.  Dkt. No. 9, Ex. D at 686.  The reconstruction

hearing was adjourned to give Petitioner an opportunity to review various documents and the

*Huntley* hearing transcript.

On November 10, 2003, at the second reconstruction hearing, Petitioner objected to the

use of the *Huntley* hearing transcript because it was uncertified and because it did not include: (1)

his request to Judge Halloran that he be permitted to proceed *pro se*; (2) Petitioner's claim that

appointed trial counsel demanded $10,000.00 from him; and (3) Inspector Ferro's testimony did

not include an alleged promise he made to Petitioner that if he cooperated, his wife would not be

charged.  Dkt. No. 9, Ex. D at 787-89; Ex. H at 6.  The court ordered counsel to contact Judge

Halloran and request that he review the transcript and advise the court of its accuracy.  Dkt. No.

9, Ex. D at 800-03; Ex. H at 7.

In the final reconstruction hearing held on February 11, 2004, handwritten sentencing

notes of the assistant district attorney assigned to Petitioner's trial and of Judge McGill, along

with documents that formed the basis of Petitioner's sentence, were submitted to the court.  Dkt.

No. 9, Ex. H at 7; Ex. D at 813-18.  Counsel also informed the court that Judge Halloran

confirmed the authenticity of the uncertified *Huntley* hearing transcript to the extent that he had

no reason to doubt its authenticity as to the portions attributed to him.  Dkt. No. 9, Ex. H at 7-8;

Ex. D at 810-11.  On November 29, 2004, counsel submitted a letter from Glanda to Judge

Halloran in which he stated that the *Huntley* hearing transcript had not been produced by his

secretary or by himself.  *Id.* at 8.[6]  Judge Halloran indicated in a letter dated November 30, 2004,

---

[6]      In a letter dated January 20, 2008, Petitioner attached a purported copy of Glanda's unsworn, handwritten
November 2004 letter in an attempt to submit it for this Court's review.  *See* Dkt. No. 11.  In an Order dated February 4,
2008, Petitioner's letter and attachment were stricken from the docket because the attachment was "illegible and is unclear
as to what relief petitioner is seeking from this Court or for what purpose he is submitting the attached document."  Dkt.

that the Glanda letter did not change his opinion as to the authenticity of the transcript.  *Id.*[7]

In a Decision and Order dated December 6, 2004, Judge McGill found that the uncertified

transcript of the *Huntley* hearing was "authentic and an accurate record of the proceeding" and

concluded that there was "no need to reconstruct same."  Dkt. No. 9, Ex. H at 8. The court then

concluded that a review of the exhibits introduced at the November 10, 2003 reconstruction

hearing, along with the court's recollection and notes of the sentencing[8], was adequate to

reconstruct the sentencing record by "means of a 'statement in lieu of stenographic transcript'

pursuant to CPLR 5526[3][d]."  *Id.* at 9.

Finally, the court found that the gaps in the trial transcript, "though not appropriate or

ideal, do not in and of themselves create an appealable issue."  Dkt. No. 9, Ex. H at 11.  The

court noted that such gaps become significant only if Petitioner could show that the missing

information "would or should have had an impact on the outcome of the case."  *Id.*  The court

ruled that the existing transcripts and exhibits submitted by the parties provided "an adequate

record for appeal," and deemed the record settled.  *Id.* at 12.

On November 3, 2005, the Appellate Division, Third Department, affirmed Shire's

conviction and sentence. *People v. Shire,* 23 A.D.3d 709 (3d Dep't. 2005). *See* Dkt. No. 9, Ex. E.

It also found that the transcripts were sufficient to permit adequate appellate review of each of

the claims raised by Petitioner. *Id.* at 710.  The New York Court of Appeals denied Shire's

application for leave to appeal on April 12, 2006.  *People v. Shire*, 6 N.Y.3d 852 (2005). *See* Dkt.

---

12.  Petitioner's letter and its attachment will therefore not be considered.

[7]        No copy of this letter has been provided to this Court.

[8]        These records were submitted to the Court for in camera review.  *See* Dkt. No. 8 at 3 n. 1.

No. 9, Ex. G.

On July 18, 2006, Petitioner filed a *pro se* motion to vacate his conviction pursuant to CPL § 440.10. Dkt. No. 9, Ex. I.  Petitioner reiterated his claims on direct appeal that the transcripts were incomplete and prevented meaningful appellate review.  He also claimed that the evidence was insufficient to sustain his convictions, his right to a speedy trial was denied, and that trial counsel was ineffective.  *Id.* Judge McGill denied the motion in a Decision and Order dated October 31, 2006.  Dkt. No. 9, Ex. J.  Leave to appeal was denied by the Appellate Division, Third Department, on January 2, 2007.  Dkt. No. 9, Ex. L.


      **B.**      **This Action**

On March 19, 2007, Petitioner filed a *pro se* petition in this District seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  *See* Dkt. No. 1.  In an Order dated March 26, 2007, respondent was directed to file his response.  *See* Dkt. No. 3. On November 13, 2007, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed a response and memorandum of law in opposition to the petition along with the relevant state court records. *See* Dkt. Nos. 8-10.  On March 13, 2008, Petitioner filed a motion requesting the appointment of counsel.  Dkt. No. 16.  In an Order dated March 18, 2008, the motion was denied without prejudice.  Dkt. No. 17.

Petitioner argues in his petition that: (1) he was denied his due process right to pursue his appeal because the transcripts were incomplete and inaccurate (Grounds One and Four); (2) he was denied the right to a speedy trial (Ground Two); and (3) trial counsel was ineffective because, without consulting Petitioner, counsel waived his right to a speedy trial (Ground Three).

*See* Dkt. No. 1, at 5-6 ¶12 (A)-(D).  For the reasons that follow, the petition is **denied**.


## II.  DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

court may award habeas corpus relief with respect to a claim adjudicated on the merits in state

court only if the adjudication of the claim: (1) was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of the United

States; or (2) was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.[9] *Hawkins v. Costello,* 460 F.3d 238, 242 (2d Cir. 2006),

*cert. denied sub nom Hawkins v. Perlman*, 127 S. Ct. 1267 (2007); *DeBerry v. Portuondo*, 403

F.3d 57, 66 (2d Cir. 2005) (citing 28 U.S.C. § 2254(d)), *cert. denied sub nom DeBerry v. Smith*,

546 U.S. 884 (2005). AEDPA also requires that in a habeas proceeding "a determination of a

factual issue made by a State court shall be presumed to be correct [and][t]he applicant shall have

the burden of rebutting the presumption of correctness by clear and convincing evidence." 28

U.S.C. § 2254(e)(1); *see also DeBerry*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d

Cir. 2001).

A state court decision violates the "contrary to" clause of section 2254(d)(1) when it

"reaches a result opposite to the one reached by the Supreme Court on the same question of law

or arrives at a result opposite to the one reached by the Supreme Court on a 'materially

---

[9] It should be noted that "clearly established federal law" in this context "refers only to the holdings of the Supreme Court." *Rodriguez v. Miller*, 499 F.3d 136, 140 (2d Cir. 2007) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)), *cert. denied* 128 S. Ct. 1655 (2008).

indistinguishable' set of facts.' " *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quoting

*Williams,* 529 U.S. at 405-06). A federal habeas court may only grant the writ under the

"unreasonable application" clause of the section when the state court's decision "identifies the

correct rule of law but applies that principle to the facts of the petitioner's case in an

unreasonable way." *Id.* at 74 (citing *Williams*, 529 U.S. at 413). A federal court engaged in

habeas review is not charged with determining whether the state court's determination was

merely incorrect or erroneous, but instead whether such determination was "objectively

unreasonable." *Williams*, 529 U.S. at 409-10; *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d

Cir. 2001). Objectively unreasonable means " 'some increment of incorrectness beyond error' " is

required in order to grant a federal habeas application. *Earley*, 451 F.3d at 74 (quoting *Francis S.

v. Stone*, 221 F.3d 100, 111 (2d Cir.2000)).

　　　If, however, a state court does not adjudicate a petitioner's federal claim "on the merits,"

the state court's decision is not entitled to AEDPA deference and instead, the federal habeas

court must apply the pre-AEDPA standard of *de novo* review to the state court's disposition of

the federal claim.  *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (citing *Aparicio v.

Artuz*, 269 F.3d 78, 93 (2d Cir. 2001)).


　　　**B.**　　**Incomplete Transcripts**

　　　Petitioner claims that his due process rights were violated because the transcript of his

pre-trial and trial proceedings were inaccurate and incomplete and that as a result, he was unable

to "prosecute his intermediate appeal."  Dkt. No. 1, at ¶¶ 12(A), (D).  Respondent argues that this

claim is without merit. Dkt. No. 10, Resp't Mem. at 16-18.

There is no federal constitutional right to a state criminal appeal under the Sixth

Amendment. *Halbert v. Michigan*, 545 U.S. 605, 610 (2005); *Martinez v. Court of Appeal of*

*Cal., Fourth Appellate Dist.,* 528 U.S. 152, 160 (2000); *Estelle v. Dorrough*, 420 U.S. 534, 536

(1975); *Taveras v. Smith*, 463 F.3d 141, 147 (2d Cir. 2006).  When states offer criminal

defendants the right to appeal their convictions, as New York has done by statute, the procedures

used must comport with the dictates of due process. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985);

*Taveras,* 463 F.3d at 147.  The state must provide a transcript or "other equivalent reports,"

*Taveras*, 463 F.3d at 148, to indigent defendants if one is necessary to decide the merits of an

appeal.  *Halbert*, 545 U.S. at 610; *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985).  While there is no

constitutional right to an "absolutely accurate" transcript, *Burrell v. Swartz*, 558 F. Supp. 91, 92

(S.D.N.Y. 1983), the transcript must be "reasonably accurate." *Benjamin v. Greiner*, 296 F. Supp.

2d 321, 333 (E.D.N.Y. 2003)(quoting *Curro v. Watson*, 884 F. Supp. 708, 719 (E.D.N.Y.1995),

*aff'd* 100 F.3d 942 (2d Cir. 1996)).

When a federal habeas petitioner claims that the transcript was inadequate to permit a

constitutionally fair appeal, a reviewing court should consider whether, and to what extent, the

state was at fault for not preserving the record, and whether the state provided the petitioner with

an opportunity to reconstruct and settle the record. *Van Stuyvesant v. Conway*, No. 03-CV-3856,

2007 WL 2584775, at *37 (S.D.N.Y. Sept. 7, 2007); *Burrell*, 558 F. Supp. at 92.  If the state fails

to provide a "fair and adequate procedure" to settle the record, or the transcript has been the

subject of intentional tampering by a state official, "the due process clause of the fourteenth

amendment might be violated."  *Burrell*, 558 F. Supp. at 92.  To prevail on a claim that the

transcript is inaccurate, as opposed to incomplete, a petitioner must overcome the "presumption

of regularity" that attaches to criminal proceedings by substantial evidence to the contrary. *Van Stuyvesant,* 2007 WL 2584775, at *37 n. 34; *Ford v. Phillips*, No. 03-CV-2077, 2007 WL 957536, at *9 (E.D.N.Y. Mar. 29, 2007); *Benn v. Stinson*, 917 F. Supp. 202, 207 (S.D.N.Y. 1995). Petitioner must also show actual prejudice resulting from an incomplete or inaccurate transcript. *Van Stuyvesant,* 2007 WL 2584775, at *37; *Godfrey v. Irvin*, 871 F. Supp. 577, 584 (W.D.N.Y. 1994); *Burrell*, 558 F. Supp. at 92. "Speculation" that missing or incomplete portions of the transcript may "reflect reversible error is not enough." *Godfrey*, 871 F. Supp. at 584. *See McCray v. Barkley*, No. 03-Civ. 4821, 2004 WL 32931, at *11-12 (S.D.N.Y. Jan. 7, 2004)(quoting *Godfrey*).  Petitioner has not met this burden.

The settlement procedures followed in this case were fair and adequate.  New York's Civil Practice Law and Rules ("C.P.L.R.") section 5525 permits an appellant who believes that information contained in transcripts is inaccurate or missing to submit proposed amendments to the transcript to the court and serve them upon the respondent, who may then make proposed amendments or objections to the appellant's proposed amendments.  If the parties agree on the changes, they must certify their agreement and no formal settlement proceeding is necessary. C.P.L.R. § 5525 (c)(1).  If the parties cannot agree, the proposed amendments and any objections are then submitted, whenever possible, to the judge who presided over the proceeding in question for settlement.  *Id.*  The trial court is the "final arbiter of the record."  *People v. LaMotte*, 276 A.D.2d 931 (3d Dep't. 2000)(citing *People v. Alomar*, 93 N.Y.2d 239, 247 (1999)).  Any significant unresolved questions concerning the transcript's accuracy can be raised on appeal and the appellate court may remand the proceedings back to the trial court to "resettle the transcript." *Curro*, 884 F. Supp. at 718 (citing *People v. Locke*, 154 A.D.2d 622, 623 (2d Dep't 1989)).

13

In accordance with section 5525, defense counsel, on behalf of Petitioner, submitted to the court and to the District Attorney proposed amendments to the trial transcript. Dkt. No. 9, Ex. H at 4-5. *See* C.P.L.R. 5525(c)(1).  Although the parties agreed on several of the amendments and so stipulated, they disagreed regarding certain gaps in the trial transcript and with respect to the *Huntley* hearing and sentencing transcripts.  Dkt. No. 9, Ex. H at 5.  After a series of reconstruction hearings, the trial court settled the record, finding that the transcripts and exhibits provided an adequate record for appeal.  Dkt. No. 9, Ex. H at 11-12.  The Appellate Division agreed. *Shire*, 23 A.D.3d at 709-10.  That decision is not contrary to or an unreasonable application of clearly established Supreme Court precedent.  *See Molina v. Kaye,* 956 F. Supp. 261, 264 (E.D.N.Y. 1996)(when "transcripts are missing or inaccurate, sufficient procedures exist in New York to ensure fair appellate review.")(citing section 5525); *Curro,* 884 F. Supp. at 718 ("New York's transcript settlement procedures provided all the process that Curro was due . . .").

Petitioner has also failed to allege or demonstrate that the uncertified *Huntley* hearing transcript was inaccurate or was not authentic.  *Burrell*, 558 F. Supp. 2d at 92. The Appellate Division was unpersuaded that the *Huntley* hearing transcript was inaccurate in light of the fact that Petitioner did not object on those grounds and offered no evidence to substantiate a claim that the transcript was inaccurate.  *Shire*, 23 A.D.3d at 710.  That finding is supported by the record.

The *Huntley* hearing transcript was located in Petitioner's trial counsel's file.  Dkt. No. 9, Ex. D at 786.  As noted during a reconstruction hearing, if the transcript was inaccurate, trial counsel likely would have pointed out the errors. *See* Ex. D at 790-91.  Judge Halloran, who

presided over the hearing, reviewed the transcript and concluded that it was accurate.  *Id.* at 810-

11 ("the manner in which it [the transcript] was transcribed, it is the way that he speaks and the

phrases that he used, and the way it was transcribed made him come to the conclusion that it was

an accurate transcription.").  That opinion did not change after reviewing a letter from the

stenographer that neither he nor his secretary produced the transcript.  Dkt. No. 9, Ex. H at 8.

There is similarly no evidence to suggest that gaps in the trial transcripts, which are denoted by a

series of letters in place of words, were the result of intentional tampering by state officials.

Petitioner has failed to overcome the presumption of regularity that attaches to criminal

proceedings by substantial evidence to the contrary. *See Daniels v. United States*, 532 U.S. 374,

381 (2001)(quoting *Parke v. Raley*, 506 U.S. 20, 29 (1992)); *Van Stuyvesant,* 2007 WL 2584775,

at *37 n. 34; *Ford,* 2007 WL 957536, at *9 (E.D.N.Y. Mar. 29, 2007).

Petitioner has also failed to show that any gaps in the trial transcripts prejudiced his

statutory right to appeal, or that the "missing portions of the transcript reflect reversible error."

*McCray,* 2004 WL 32931, at *12 (quoting *Godfrey*, 871 F. Supp. at 584)(internal quotation

marks omitted).  In fact, the substantive claims Petitioner raised on appeal regarding the

*Sandoval* ruling and the weight of the evidence were adjudicated by the Appellate Division.  That

court found that, based on the record, it could "discern which prior convictions were at issue and

the reasoning behind County Court's ruling," and found "no basis for reversal" of the trial court's

*Sandoval* ruling.  *Shire*, 23 A.D.3d at 710.  The Appellate Division rejected Petitioner's weight

of the evidence claim, ruling that although there were gaps in the transcript, those gaps were

"short and infrequent" and did not "hinder [the court's] ability to comprehend the relevant

testimony."  *Id.*  In light of the "ample evidence" against Petitioner, which included Petitioner's

statement to police and the tape recordings of Petitioner's dealings with an undercover officer, the court could not find that "a  weight of the evidence argument would succeed but for the gaps in the transcript." *Id*.  The alleged inaccuracies in the transcript did not deny Petitioner a fair appeal.

Finally, Petitioner has not set forth what additional claims could not have been raised or decided on direct appeal due to gaps in the transcript. *See Godfrey*, 871 F. Supp. at 584. Petitioner makes reference in Ground One of the petition to a right "[t]o compel the attendance of favorable witnesses petitioner wife [sic]" and "[t]he right to confront adverse witnesses confidence in the outcome [sic]".  Dkt. No. 1, at 5 ¶12(A).  It is unclear whether Petitioner is arguing that these claims could not be raised or decided on direct appeal due to gaps in the transcripts, or whether he is asserting these claims as independent due process violations.  In either case, these claims are vague and unsupported by any factual allegations or evidence, and are therefore dismissed.  *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 45 (2d Cir.1989) (summary dismissal of a habeas petition is justified where the allegations are " 'vague, conclusory, or palpably incredible' ")(quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)); *Sosa v. Mohawk Corr. Fac.*, No. 07 Civ. 5916, 2008 WL 534764, at *3 (S.D.N.Y. Feb. 25, 2008)(claims that are "vague or conclusory may be summarily rejected on that basis alone."); *Jones v. Poole*, No. 06 Civ. 7172, 2007 WL 2456646, at *11 (S.D.N.Y. Aug. 21, 2007)(citing *Skeete v. People of New York State*, No. 03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("Skeete's second claim is no more than a vague allegation that 'numerous' violations and errors occurred at his trial. Skeete fails to offer even the most cursory description of these alleged errors. He offers no facts, nor any reference to the record. Such vague, conclusory and

unsupported claims do not advance a viable claim for *habeas corpus* relief.") (emphasis in

original); *Hall v. Phillips*, No. 04-CV-1514, 2007 WL 2156656, at *14 (E.D.N.Y. Jul. 25,

2007)(lack of factual allegations to support habeas claim is "fatal").

     In sum, Petitioner was provided with a fair and adequate opportunity to reconstruct and

correct the record.  There is no evidence that the *Huntley* hearing transcript was inaccurate or had

been the subject of tampering, and there is no evidence that gaps in the transcripts deprived

Petitioner of a constitutionally fair appeal. The Appellate Division's decision was not contrary to

or an unreasonable application of clearly established Supreme Court precedent, and this claim is

therefore denied.

### C.    Speedy Trial

     Petitioner next claims that his right to a speedy trial was denied by the prosecutor, who

unreasonably delayed the proceedings in order to "pressure" Mrs. Shire into testifying against

him.  Dkt. No. 1, at 5 ¶ 12(B).  Respondent argues that this claim is procedurally barred and

without merit.  Dkt. No. 10, Resp't. Mem. at 18-22.

#### 1.    Procedural Default

     Petitioner's speedy trial claim is procedurally barred. He did not raise this claim on direct

appeal, but did raise it in his motion to vacate his conviction.  *See* Docket No. 9, Ex. I.  The state

court denied the claim under CPL§ 440.10(2)(c) on the ground that although sufficient facts

appeared on the record, Petitioner unjustifiably failed to raise the claim on direct appeal.  *See*

Docket No. 9, Ex. J at 3 (Decision and Order, McGill, J., 10/31/06).  The denial of a claim under

section 440.10(2)(c) rests upon an independent and adequate state ground and federal review of

the claim is barred. *Fernandez v. Artuz,* 402 F.3d 111, 115 n.4 (2d Cir. 2005) (identifying CPL §

440.10(2)(c) as a procedural bar under New York law), *cert. denied sub nom Haponik v.*

*Fernandez*, 546 U.S. 816 (2005); *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993), *cert.*

*denied* 510 U.S. 1078 (1994)(same); *Kent v. Smith*, No. 05-CV-785, 2007 WL 2907350, at *8

(N.D.N.Y. Oct. 4, 2007)(Kahn, D.J., and Homer, M.J.)(same).

This procedurally barred claim may be reviewed only if Petitioner demonstrates cause for

the default and resulting prejudice, or that the failure of the federal court to review the claim will

result in a "miscarriage of justice" *i.e.*, that the petitioner is actually innocent. *Calderon v.*

*Thompson*, 523 U.S. 538, 559 (1998); *Coleman v. Thompson,* 501 U.S. 722, 748-50 (1991).  To

establish "cause" sufficient to excuse a procedural default, a petitioner must show that some

objective external factor impeded his or her ability to comply with the relevant procedural rule.

*Coleman*, 501 U.S. at 753, *Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999).

 Petitioner has failed to establish cause to excuse the procedural default, and has never

argued, in either the state courts or this proceeding, that his appellate counsel rendered ineffective

assistance by failing to argue in the state courts that he was denied the right to a speedy trial.

Since Petitioner has not established cause for his procedural default, the Court need not decide

whether he suffered actual prejudice, because federal *habeas* relief is generally unavailable as to

procedurally defaulted claims unless *both* cause and prejudice are demonstrated.  *Stepney v.*

*Lopes,* 760 F.2d 40, 45 (2d Cir. 1985); *Staley v. Greiner*, No. 01-CV-6165, 2003 WL 470568, at

*7 (S.D.N.Y.  Feb. 6, 2003)(citing *Stepney*), *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y.

1997)(Kahn, D.J.). Petitioner has also failed to present any new evidence that he is "actually

innocent" of the crimes for which he was convicted.  *See Schlup v. Delo*, 513 U.S. 298, 327

18

(1995).  Petitioner's speedy trial claim is therefore denied on this procedural basis.

### 2.    **The Merits**

In any event, the record does not support a claim that Petitioner's constitutional speedy trial rights were violated.  The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ." U.S. CONST. amend. VI.  In determining whether there has been a constitutional speedy trial violation, courts should consider the length of the delay and whether it was "uncommonly long,"  the reason for the delay, including whether the government or the defendant was responsible for it; the defendant's assertion of the right; and whether the defendant suffered prejudice as a result of the delay. *Doggett v. United States*, 505 U.S. 647, 651 (1992)(citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)); *Smith v. Murray*, No. 03-CV-6553L, 2007 WL 2581687, at *3, 7 (W.D.N.Y. Sept. 5, 2007); *Dexter v. Artus*, No. 01-CV-237, 2007 WL 963204, at *6-7 (N.D.N.Y. Mar. 27, 2007)(McAvoy, S.J., and Bianchini, M.J.). If the length of the delay is presumptively prejudicial, courts will then analyze the remaining three factors. *Barker,* 407 U.S. at 530; *Dexter*, 2007 WL 963204, at *6.

The length of the delay between Petitioner's arrest on November 12, 1995 and his trial on September 30, 1996 was ten (10) months. The Second Circuit has stated that there is a "general consensus that a delay of over eight months meets this standard [of presumptive prejudice], while a delay of less than five months does not." *Dexter,* 2007 WL 963204, at *6 (quoting *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir.1992), *cert. denied sub nom Moore v. United States*, 506 U.S. 1009 (1992)(citations omitted)).  *See United States v. Marley*, No. 01-CR-339, 2006 WL 3544929, at *3 (N.D.N.Y. Dec. 8, 2006)(Scullin, D.J.) ("Although there is no

bright-line standard as to what constitutes a presumptively prejudicial delay, courts generally agree that the threshold is crossed as the delay approaches one year."). While a ten-month delay may be presumptively prejudicial, it does not, *per se*, establish a violation of petitioner's Sixth Amendment right to a speedy trial.  The Supreme Court and the Second Circuit have found that no constitutional speedy trial violation occurred in cases where the period between arrest and trial was much longer.  *See, e.g., Barker*, 407 U.S. at 533-34 (five years); *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990)(twenty-six months); *Rayborn v. Scully*, 858 F.2d 84, 89, 93-94 (2d Cir. 1988), *cert. denied* 488 U.S. 1032 (1989)(eighty-six months); *Flowers v. Warden, Connecticut Corr. Institution*, *Somers*, *Conn*., 853 F.2d 131, 133 (2d Cir. 1988), *cert. denied* 488 U.S. 995 (1988)(seventeen months); *see also Kelly v. Lape*, No. 04-CV-218, 2007 WL 405856, at *3 (N.D.N.Y. Feb. 1, 2007)(Kahn, D.J., and Homer, M.J.)(less than ten-month delay "considerably shorter than those in other cases where no Sixth Amendment speedy trial violation has been found.").

When analyzed under the remaining three *Barker* factors, the ten-month delay here did not violate Petitioner's constitutional right to a speedy trial. *See Dexter*, 2007 WL 963204, at *8 ("The presumption of prejudice that arises with a long delay must be analyzed in connection with the reason for the delay.")(citing *Doggett*, 505 U.S. at 655). Although Petitioner alleges that the prosecutor caused the delay to gain a "tactical advantage" and to "pressure" and "harass" Mrs. Shire into testifying (Dkt. No. 1, at 5 ¶ 12(B)), the record does not support that assertion.  The record suggests that the prosecutor attempted to secure Mrs. Shire's attendance at trial beginning in September 1996 but was unsuccessful.  Dkt. No. 9, Ex. D at 960-69.  The reason for the delay in this case was also due in part to the litigation of pretrial motions, including a motion to

suppress Petitioner's statement to police. On this record, there does not appear to have been any "deliberate attempt to delay the trial in order to hamper the defense." *Barker*, 407 U.S. at 531.

Finally, although Petitioner lists the date of April 2, 1996 in Ground Two of his petition, (Dkt. No. 1, at 5 ¶ 12(B)), he has failed to cite any part of the record in which he asserted that his right to a speedy trial had been violated. He has also failed to allege or show how he suffered prejudice as a result of the delay. *Barker*, 407 U.S. at 532; *Smith,* 2007 WL 2581687 at *6. *See Dexter*, 2007 WL 963204 at *8 (stating that a petitioner must show " 'particular prejudice' " because " 'presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria . . . it is part of the mix of relevant facts.' ") (quoting *United States v. Solomon*, No. 95 Cr. 154, 1996 WL 399814, at *5 (S.D.N.Y. Jul. 16, 1996) (quoting *Doggett*, 505 U.S. at 655). Since there does not appear to have been any deliberate delay on the part of the prosecution, and there is no indication of actual prejudice, Petitioner's speedy trial claim is dismissed.

###    D.    Ineffective Assistance of Trial Counsel

Petitioner next claims that trial counsel was ineffective because he waived Petitioner's right to a speedy trial without consulting Petitioner. Dkt. No. 1 at 6 ¶ 12(C). Respondent argues that this claim should be dismissed because it is "vague and conclusory." Resp't Mem. at 22-23.

Petitioner raised this claim, along with several other challenges to counsel's effectiveness, in his motion to vacate conviction. Dkt. No. 9, Ex. I at 12, ¶ 47. The trial court found that Petitioner failed to include any facts regarding the "context and substance" of each of his claims of counsel's alleged ineffectiveness, and rejected this claim. Dkt. No. 9, Ex. J at 4. That decision

is entitled to AEDPA deference.

To establish ineffective assistance of counsel, a *habeas* petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and (2) prejudice, *i.e.*, there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (cited in *Bell v. Cone*, 535 U.S. 685, 695 (2002)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002), *cert. denied* 537 U.S. 1093 (2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997), *cert. denied* 522 U.S. 1128 (1998); *White v. Herbert*, No. 02-CV-439, 2006 WL 3728878, at *4 (N.D.N.Y. Dec. 15, 2006)(McCurn, S.J.).[10]  There is a strong presumption that counsel rendered adequate assistance as courts give high deference to counsel, and Petitioner "must overcome the presumption that the challenged action 'might be considered sound trial strategy.' " *Gatto v. Hoke*, 809 F. Supp. 1030, 1038 (E.D.N.Y. 1992) (quoting *Strickland,* 466 U.S. at 689), *aff'd,* 986 F.2d 500 (2d Cir. 1992).  *See also Jackson v. Conway*, 448 F. Supp. 2d 484, 492 (W.D.N.Y. 2006).

Here, Petitioner does not set forth with any specificity the details corroborating his claim that counsel waived his speedy trial rights, nor does he explain how the outcome would have been different absent this alleged error.  Therefore, this claim is too vague to state a basis for habeas relief.  *Hall,* 2007 WL 2156656, at *13 (absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas."); *Brown v. New York*, No. 04-CV-1087, 2006 WL 3085704, at *7 (E.D.N.Y. Oct. 30, 2006)(vague and conclusory allegations are insufficient to state a viable claim for habeas relief); *Skeete,* 2003 WL 22709079, at *2

---

[10] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]' " 529 U.S. 362, 391 (2000); *see also Sellan,* 261 F.3d at 309.

("vague, conclusory and unsupported claims do not advance a viable claim for *habeas corpus relief.*")(emphasis in original).

Moreover, as noted above, any speedy trial claim would likely have been unsuccessful. Counsel cannot now be deemed ineffective for failing to make a argument or objection that stood little chance of success. *See United States v. Arena,* 180 F.3d 380, 396 (2d Cir.1999) ( "Failure to make a meritless argument does not amount to ineffective assistance."), *cert. denied* 531 U.S. 811 (2000); *Hall*, 2007 WL 2156656, at *13 ("The law in this circuit is clear that when the underlying claims themselves are found to be meritless, the ineffective assistance claim is meritless as well.")(citing *Arena*). This claim is dismissed.

## IV. Certificate of Appealability

For the reasons set forth above, the petition for a writ of habeas corpus filed by Shire is **dismissed.** No certificate of appealability shall issue because Shire has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000).

**WHEREFORE,** after reviewing Shire's submissions and the relevant law, and for the reasons stated herein, the Court hereby

ORDERS that Shire's petition for a writ of habeas corpus is **DISMISSED**; and the Court further

ORDERS that the Clerk of the Court shall serve a copy of his Order on Shire by regular

mail.

**IT IS SO ORDERED.**

 Dated:June 2, 2008

Thomas J. McAvoy
Senior, U.S. District Judge